NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
                                                                          :
ZANY TOYS, LLC,                                        :
                                                                          :
              Plaintiff,                                       :
                                                                          :        Civil Action No. 13-5262 (JAP) (TJB)
                            v.                                   :
                                                                          :        **OPINION**
PEARL ENTERPRISES, LLC,                      :
                                                                          :
              Defendant.                                    :
_____:

PISANO, District Judge.

This matter comes before the Court upon a Motion for Preliminary Injunction by Plaintiff

Zany Toys, LLC ("Zany Toys" or "Plaintiff") [ECF No. 8].   Defendant Pearl Enterprises, LLC

("Pearl" or "Defendant") opposes the Motion, and has also filed its own Motion to Dismiss

Counts II and V of Plaintiff's Amended Complaint [ECF No. 24].  The Court has considered the

parties' submissions and held oral argument on March 28, 2014.  The Court issues its findings of

fact and conclusions of law on Zany Toys' Motion as required by Federal Rule of Civil

Procedure 52. For the reasons set forth below, the Court will deny Plaintiff's Motion for a

Preliminary Injunction, and grant Defendant's Motion to Dismiss Counts II and V.

I.      **Background and Findings of Fact**[1]

        A.      **Zany Toys and its Marks**

        Zany Toys is engaged in the business of researching, developing, marketing and selling

novelty products, toys and game things.  *See* Declaration of Amy Tiernan ("Tiernan Decl.") ¶ 31.

---

[1] To the extent that any findings of fact might constitute conclusions of law, they are adopted as such. Conversely, to the extent that any conclusions of law constitute findings of fact, they are adopted as such.  These findings of fact are applicable to the preliminary injunction motion only; to the extent that any facts are referenced in regards to the motion to dismiss discussion, they are taken from the Amended Complaint only, and all reasonable inferences are made in favor of Zany Toys.

As early as July 23, 2010, Plaintiff has been using the trademarks "THE NO! BUTTON" and "NO!" (the "Marks") in interstate commerce in connection with a talking electronic press-down toy and talking toys.  *See* Am. Compl. ¶¶ 1-2.

The Marks were initially conceived by Amy Tiernan and Robert V. Tiernan, Jr. (together, the "Tiernans"), individuals who are now the owners/principals of Zany Toys.  The Tiernans had the idea to create THE NO! BUTTON product starting in about 2003, and spent several years researching and developing the product.  *See* Tiernan Decl. ¶¶ 7, 12-15.  The Tiernans originally conceived the Marks without the exclamation point; however, early in the development process and before offering the product for sale, the Tiernans realized that the mark could be accidentally read as "ON" instead of "NO" as it appears on the product.  In order to avoid this misunderstanding, the Tiernans added an exclamation point to the Marks and to the product, to make clear that the word is "NO" rather than "ON."  *See* Second Declaration of Amy Tiernan ("Second Tiernan Decl.") ¶¶ 13-15.  Rather than changing the Marks, the exclamation point worked to clarify the Marks.  *Id.* at ¶¶ 16-17.

 On or about August 13, 2007, the Tiernans registered the domain name "thenobutton.com."  Tiernan Decl. ¶ 18.  This domain name does not contain an exclamation point because of limitations of the domain name registration system and rules, which do not permit exclamation points.  Second Tiernan Decl. ¶ 18.  On or about July 27, 2007, the Tiernans began to refer to their product as "The No Button" in written communications with designers, consultants, business partners, and friends and family.  Tiernan Decl. at ¶ 19.  Around that time, they also began communicating with companies for ordering prototypes.  They received the first samples of the products to consider for marketing in 2008.  These first versions of THE NO! BUTTON were keychains that incorporated THE NO! BUTTON, but the Tiernans eventually

2

decided to go forward with THE NO! BUTTON in its currently marketed form as a talking electronic press-down toy. *Id.* at ¶¶ 21-24. On June 5, 2008, the Tiernans filed a federal trademark Application Serial No. 77491387 for "NO BUTTON" for "talking electronic press-down toy" and "talking toys" in Class 28. The United States Patent & Trademark Office (the "USPTO") issued a refusal. The Tiernans were acting *pro se* and were uncertain as how to respond to this refusal and allowed the application to be abandoned. They allege that they maintained a *bona fide* intent to use their mark in commerce. *See id.* at ¶ 25; Am. Compl. ¶ 24.

Between May and July 2010, the Tiernans finalized and approved the final version of THE NO! BUTTON and began manufacturing and marketing activities for the product. Tiernan Decl. ¶ 26. The THE NO! BUTTON product is a press-down toy, which is marketed with "SIMPLY PRESS THE BUTTON AND HEAR A RESOUNDING NO! COME OUT OF THE BUTTON IN 10 DIFFERENT VERSIONS." *Id.* at ¶ 54. In July 2010, the Tiernans began selling the product directly from their website, and their first wholesale sale to a retailer occurred on July 23, 2010. *Id.* at ¶¶ 29-30. On September 20, 2010, the Tiernans formed Zany Toys, and conveyed the rights to the Marks and other ancillary rights to Zany Toys. Zany Toys has been the owner of the Marks since September 20, 2010.

### B.   Popularity and Sale of THE NO! BUTTON

THE NO! BUTTON product is available through retailers such as Learning Express Stores, iParty, AC Moore, and Hallmark Stores, and online through digital stores such as amazon.com and eBay.com. Zany Toys has shipped this product to every one of the 50 states, and internationally. Plaintiff has enjoyed great success in the marketplace. From its launch date on July 23, 2010, Zany Toys sold 1,596 units of the product in 2010. In 2011, it sold 69,260 units. In 2012, it sold 204,644 units. As of September 2013, Zany Toys sold 85,838 units.

Additionally, Zany Toys have furnished demonstration units to retailers who sell Plaintiff's products for use as display units to allow potential customers to try the product.  In 2010, since the date of launching the product, Zany Toys furnished 23 units.  In 2011, it furnished 703 units, and in 2012 it furnished 782 units.  As of September 2013, it had furnished 139 units to retailers in 2013.  THE NO! BUTTON product is the primary source of income for Zany Toys.   In total, from July 23, 2010 to September 30, 2013, Plaintiff has sold over 360,000 units of its THE NO! BUTTON product, amounting to an excess of $4 million in sales.  Second Tiernan Decl. ¶ 27.

On September 28, 2010, Zany Toys created the "The No Button" page on the social networking site Facebook.  As of September 2013, this Facebook page has 229 so-called "Likes."  THE NO! BUTTON product has been used as part of a video presentation during the 2012 Emmy Awards ceremony, which as many as 13.2 million viewers watch, and used by the New York Giants football coach Tom Coughlin in an interview as part of a National Football League video.  These references and uses of THE NO! BUTTON product were unsolicited and gratuitous.  Zany Toys' product has also been used and/or featured on other television shows. *See* Tiernan Decl. at ¶¶ 41-51.

### C.    Pearl's Conduct

On January 3, 2013, an individual acting on behalf of JR Trading Co., Mr. Yaakov Feingold, placed an order for 100 units of Plaintiff's THE NO! BUTTON product.  *See* Am. Compl. ¶ 68; Tiernan Decl. ¶ 64, Ex. F.  The email address associated with the order was yyfeingold@yeshivanet.com.  *See* Am. Compl. ¶ 69; Tiernan Decl. at ¶ 65, Ex. F.  On the same day, January 3, 2013, Pearl filed federal trademark Application Serial No. 85815112 for the mark THE NO BUTTON! for a "talking electronic press-down toy" in Class 28 based on § 1(b) intent to use.  As such, Defendant filed no date of first use.

This filing occurred less than one hour after JR Trading placed its order with Zany Toys. *See* Am. Compl. ¶ 70; Tiernan Decl. ¶ 72.   The address provided for Pearl on its Application Serial No. 85815112 is the same mailing address provided for JR Trading Co.  *See* Tiernan Decl. ¶ 75.  The correspondent identified for the application used the same email address as the one used for the January 3, 2013 order placed with Zany Toys, to wit: yyfeingold@yeshivanet.com. *Id.* at 72, Ex. H.  Accordingly, at the very least, an individual using the same personal email address that placed an order for 100 units of THE NO! BUTTON product from Zany Toys for JR Trading also filed Application Serial No. 85815112 in the name of Pearl. Since January 3, 2013, JR Trading Co. has placed five additional orders from with Zany Toys, purchasing a total of 3,300 units of THE NO! BUTTON product.  The last date that JR Trading Co. placed an order with Zany Toys was June 26, 2013.

On or about August 1, 2013, Zany Toys identified a product sold by Pearl on the website Rakuten.com.  The product image showed Zany Toys' THE NO! BUTTON product, as indicated by Zany Toys' superimposed "N" and "O" logo on the product.  The manufacturer, however, is identified as Pearl Enterprises, LLC.  *See* Tiernan Decl. ¶¶ 81-82, Ex. I.  The advertisement uses language identical to that which Zany Toys uses to advertise, market, and sell its THE NO! BUTTON product (the "advertising story"); in other words, the marketing story that Zany Toys created regarding the founding of the product and a description of the product appear in an advertisement for Pearl's product, accompanying an image of Zany Toys' product.  *See id.* Today, this advertisement still exists, but it now uses a different image that does not show the superimposed "N" and "O" logo of Zany Toys, and does not use the advertising story that Zany Toys utilizes.  *See* Declaration of Yaakov Feingold ("Feingold Decl") Ex. C.  Zany Toys alleges that Pearl offered for sale and sold (as a reseller) these approximately 3,300 units of THE NO!

BUTTON product during the six-month period that Mr. Feingold was buying product from Zany Toys, and thereafter continued to advertise the genuine THE NO! BUTTON product but fulfilled orders placed with Pearl's own product.  Zany Toys alleges that Pearl's product looks nearly identical to its own and recites ten different versions of "No" like its own, but that Pearl's product has poorer quality voice recordings, does not have appropriate safety warnings on its packaging, does not include batteries, lacks a screw to keep the cover secure, and costs more.  *See* Am. Compl. ¶¶ 54-61, 79-94; Tiernan Decl. ¶¶ 81-105.

On September 3, 2013, Zany Toys filed a Complaint against Pearl.  Zany Toys amended its Complaint on October 4, 2013.  Plaintiff's Amended Complaint makes five claims:  (1) trademark infringement under 15 U.S.C. § 1125(a); (2) design and sound recording copyright infringement under 17 U.S.C. §§ 101, et seq.; (3) false designation of origin, false endorsement, and unfair competition in violation under 15 U.S.C. § 1125; (4) trademark infringement and unfair competition in violation of New Jersey common law, and; (5) fraud on the UPTO in violation of 18 U.S.C. § 1001.  Zany Toys then filed this current motion for a preliminary injunction.  The preliminary injunction motion is based <u>only</u> on Zany Toys' claims in Counts I, II, and III of its Amended Complaint, to wit, its claims for trademark infringement and unfair competition in violation of 15 U.S.C. § 1125 and copyright infringement under 17 U.S.C. §§ 101, et seq.  Pearl opposes this motion, and filed its own motion to dismiss Zany Toys' copyright infringement and 18 U.S.C. § 1001 claims.  Because the Court is constrained to dismiss, without prejudice, Zany Toys' copyright claims, *see infra* Part IV, the only claims left before the Court for a preliminary injunction are Zany Toys' trademarks claims.  Because, however, there is no evidence of Pearl currently "using" the infringing trademark, the Court must, at this time, deny Zany Toys' request for a preliminary injunction.

## II.   <u>Standard of Law</u>

In evaluating a motion for preliminary injunctive relief, a court must consider whether: "'(1) the plaintiff is likely to succeed on the merits; (2) denial will result in irreparable harm to the plaintiff; (3) granting the injunction will not result in irreparable harm to the defendant; and (4) granting the injunction is in the public interest.'" *NutraSweet Co. v. Vit-Mar Enterprises, Inc.*, 176 F.3d 151, 153 (3d Cir. 1999) (quoting *Maldonado v. Houstoun*, 157 F.3d 179, 184 (3d Cir. 1998)). A preliminary injunction "should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). Preliminary injunctive relief is an "extraordinary and drastic remedy," *id.*, which "should issue only if the plaintiff produces evidence sufficient to convince the district court that all four factors favor preliminary relief." *American Tel. and Tel. Co. v. Winback and Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir. 1994). "The burden lies with the plaintiff to establish every element in its favor, or the grant of a preliminary injunction is inappropriate." *P.C. Yonkers, Inc. v. Celebrations the Party and Seasonal Superstore, LLC*, 428 F.3d 504, 508 (3d Cir. 2005).

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint "for failure to state a claim upon which relief can be granted."  When reviewing a motion to dismiss, courts must first separate the factual and legal elements of the claims, and accept all of the well-pleaded facts as true.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). All reasonable inferences must be made in the Plaintiff's favor.  *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010).

In order to survive a motion to dismiss, the plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This standard requires the plaintiff to show "more than a sheer possibility that a

defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A "plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). When assessing the sufficiency of a civil complaint, a court must distinguish factual contentions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. Any legal conclusions are "not entitled to the assumption of truth" by a reviewing court. *Id*. at 679. Rather, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*.; *see also Fowler*, 578 F.3d at 210 (explaining that "a complaint must do more than allege a plaintiff's entitlement to relief").

## III.   Discussion and Conclusions of Law on Plaintiff's Trademark Claims

### A.   Likelihood of Success on the Merits

"The Lanham Act defines trademark infringement as use of a mark so similar to that of a prior user as to be 'likely to cause confusion, or to cause mistake, or to deceive.'" *Freedom Card, Inc. v. JP Morgan Chase & Co.*, 432 F.3d 463, 469 (3d Cir. Del. 2005) (quoting *Kos Pharm., Inc., v. Andrx Corp.*, 369 F.3d 700, 711 (3d Cir. 2004) (quoting 15 U.S.C. § 1114(1)). To prove trademark infringement under the Lanham Act, "a plaintiff must demonstrate that (1) it has a valid and legally protectable mark; (2) it owns the mark; and (3) the defendant's use of the mark to identify goods or services causes a likelihood of confusion." *A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000). "A likelihood of confusion exists when 'consumers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark.'" *Id.* at 211 (quoting *Dranoff-Perlstein Assocs. v. Sklar*, 967 F.2d 852, 862 (3d Cir.

8

1992)).  Likelihood of confusion applies to both confusion of products or to confusion of source. *See Kos Pharm.*, 369 F.3d at 711.  Here, Pearl has argued that Zany Toys lacks a valid and protectable mark, and that even if it did, it has failed to establish a likelihood of confusion.

1. <u>Valid and Protectable Mark</u>

Unregistered marks are protected to the same extent as registered marks under the Lanham Act "because trademark rights emanate from use and not merely registration."[2] *Duffy v. Charles Schwab & Co., Inc.*, 97 F. Supp. 2d 592, 598 (D.N.J. 2000); *see Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992) ("[I]t is common ground that § 43(a) protects qualifying unregistered trademarks and that the general principles qualifying a mark for registration under § 2 of the Lanham  Act are for the most part applicable in determining whether an unregistered mark is entitled to protection under § 43(a).").  An unregistered mark, however, is only valid and legally protectable if the mark is inherently distinct or has otherwise developed secondary meaning.  *See Duffy*, 97 F. Supp. 2d at 598.

The scope of protection of an unregistered mark depends on the distinctiveness of the mark. Marks are evaluated within the following range of distinctiveness, from inherently distinctive to nondistinctive: "1) arbitrary or fanciful (such as 'KODAK'); (2) suggestive (such as 'COPPERTONE'); (3) descriptive (such as 'SECURITY CENTER'); and (4) generic (such as 'DIET CHOCOLATE FUDGE SODA)."  *Freedom Card*, *Inc.*, 432 F.3d at 472 (quotation and citation omitted).  An arbitrary or fanciful mark has no logical or suggestive relation to the actual characteristics of the goods or services.  A suggestive mark suggests rather than describes the characteristics of the goods, but requires some customer thought or perception to determine what the product is.  If a term is held to be arbitrary or suggestive, it is treated as distinctive and

---

[2] Unregistered marks, however, do not have a presumption of validity, and a plaintiff has the burden of proving that its unregistered mark is protectable.  *See Sklar*, 967 F.2d at 857 n.11.

qualifies for trademark protection (at least in those areas where the senior user applies it to its goods). *See Checkpoint Sys., Inc. v. Check-point Software Techs., Inc.*, 269 F.3d 270, 282 (3d Cir. 2001); *Sklar*, 967 F.2d at 855. A descriptive mark describes the intended purpose, function, or use of the product, and conveys an immediate idea of the qualities or characteristics of the goods. *Checkpoint Sys.*, 269 F.3d at 282. It can be given trademark rights, but only if a claimant can establish "secondary meaning," meaning that the consumers identify the term with the claimant. *See Sklar*, 967 F.2d at 855. Finally, a generic term is a common descriptive name of a product, and is not given trademark protections because a party "cannot deprive competing manufacturers of the product of the right to call an article by its name." *Id.* (quotation and citation omitted).

Here, Defendant Pearl argues that Zany Toys cannot obtain a preliminary injunction because its Marks are not protectable as they are not distinct. Zany Toys argues that Pearl should be estopped from arguing that THE NO! BUTTON trademark is non-distinctive because Pearl itself has filed an application for the mark THE NO BUTTON!. *See* Reply Br. at 3. The Court agrees.[3] Pearl's representations to the USPTO regarding its nearly identical mark indicates its belief that the THE NO! BUTTON mark is inherently distinctive. *See also MNI Mgmt., Inc. v. Wine King, LLC*, 542 F. Supp. 2d 389, 409 (D.N.J. 2008) ("The fact that defendants sought trademark protection for an identical mark inherently acknowledges that defendants also believe that the First Mark is valid and protectable.") (internal quotation omitted). Because it already took the position to the USPTO that its mark was distinctive, it cannot now argue that Zany Toys' Mark is not distinctive.[4] *See Chase Manhattan Bank, USA, N.A. v. Freedom Card, Inc.*,

---

[3] The parties have concentrated their arguments, in both their submissions and at oral argument, on the THE NO! BUTTON mark. The Court's decision is therefore focused on the same.

[4] In similar scenarios, courts have held that "licensee estoppel" works to estop a trademark licensee from challenging the validity of marks it has licensed. *See Unicasa Mktg. Group, LLC v. Martha Spinelli*, No. 04-4173,

333 F. Supp. 2d 239 (D. Del. 2004) (citing *Montrose Med. Group Participating Sav. Plan v. Bulger*, 243 F.3d 773, 779 (3d Cir. 2001) (invoking judicial estoppel when party to be estoppel asserts a position that is irreconcilably inconsistent with one he asserted in a prior proceeding); *aff'd*, 432 F.3d at 476.  This is particularly true here, where Pearl's Application Serial No. 85815112 was published for opposition on October 15, 2013 (meaning that the USPTO did not find the mark to be merely generic or descriptive), over two weeks before Pearl's responsive pleadings to this Motion were due.  It would be manifestly unjust to allow Pearl to argue that Zany Toys' Marks are not valid and protectable marks after Pearl's own Application has been published for opposition.  After all, to find that Zany Toys does not have a protectable mark could lead to a scenario where Pearl could file its own claim against Zany Toys for infringing on Pearl's registered mark.

Furthermore, even if Pearl could argue that Zany Toys' Mark was not distinct, this Court agrees with Zany Toys that its THE NO! BUTTON mark is a valid and protectable mark.  While it is a thin line between a suggestive mark and a descriptive mark, the Court is persuaded by Zany Toys that the mark appropriately belongs on the suggestive side of the distinctiveness continuum.  "A term is descriptive if it forthwith conveys an immediate idea of the ingredients, qualities or characteristics of the goods.  If the mental leap between the word and the product's attributes is not almost instantaneous, this strongly indicates suggestiveness, not direct descriptiveness." *Vista India v. Raaga*, LLC, 501 F.Supp.2d 605, 617 (D.N.J. 2007) (internal quotations and citations omitted).  The Court finds that the THE NO! BUTTON mark is suggestive, as it suggests rather than describes the characteristics of Zany Toys' product; it is not immediately apparent from the mark what the product Zany Toys provides.  *See MNI Mgmt.*, 542

---

2007 U.S. Dist. LEXIS 16628, at *13-14 (D.N.J. Mar. 7, 2007) (citing *Creative Gifts, Inc. v. UFO*, 235 F.3d 540, 548 (10th Cir. 2000)).  *See also Doeblers' Pa. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 825 n.14 (3d Cir. 2006) (explaining what licensee estoppel is, but declining to address the applicability or proprietary of it).

F. Supp. 2d at 409.  As counsel for Zany Toys argued at oral argument, the mark THE NO!

BUTTON does not automatically bring to mind what it is; for example, to hear the mark may

bring to mind a pin-button with the word "NO!" on it.  It is more than an instant mental leap to

go from the words of the mark to the product's attributes as a talking push down toy.  *See id.*

Thus, Zany Toys has established the first element of its trademark infringement claims under the

Lanham Act.

Even if the Court were to find that the Zany Toys' Mark is merely descriptive, however,

it is protectable because it has achieved secondary meaning.  "Secondary meaning is

demonstrated where, 'in the minds of the public, the primary significance of a product feature or

term is to identify the source of the product itself.'" *Duffy*, 97 F. Supp. 2d at 599 (quoting *Ford*

*Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 292 (3d Cir. 1991)).  Courts may

consider the following factors when determining if secondary meaning exists:   (1) the extent of

sales and advertising leading to buyer association, (2) length of use, (3) exclusivity of use, (4) the

fact of copying, (5) customer surveys, (6) customer testimony, (7) the use of the mark in trade

journals, (8) the size of the company, (9) the number of sales, (10) the number of customers, and

(11) actual confusion.  *See id.* (citing *Ford Motor*, 830 F.2d at 292).

Plaintiff first began using the mark "THE NO! BUTTON" in 2010 to identify its product.

By July 2011, its packaging contained the Mark, and by August or September 2011 the

packaging included the Mark with the "TM" designation.  Plaintiff's sales have been in excess of

$4 million in three years while selling over 360,000 units.  While Plaintiff has not provided much

evidence of print advertising, it maintains a social media presence and has furnished nearly 1,800

demonstration units of its product for use as display units to retailers who sell THE NO!

BUTTON product for potential customers to try.  Further, Zany Toys has maintained exclusive

rights to the Mark, and took action against two internet suppliers that were selling infringing products, forcing the cessation of the manufacturing and sales of the infringing product.  One of these suppliers now purchases genuine product from Zany Toys, and the other neither sells nor manufactures infringing product.  Finally, the "vitally important factor of evidence of copying" exists here.  *Ford Motor Co.*, 930 F.2d at 297.  Copying can be inferred here not only from the close resemblance of the trademarks at issue (THE NO! BUTTON v. THE NO BUTTON!), but also from the fact that Pearl's trademark application was filed less than an hour after purchasing Zany Toys' product directly from Zany Toys.  At the time that Mr. Feingold made the purchase of the product, Zany Toys was not only marketing and selling its product under THE NO! BUTTON, but also packaging their orders in cartons marked with THE NO! BUTTON trademark.  Thus, the (1) extent of plaintiff's sales and advertising, (2) exclusivity of use and relatively long use of time using the Mark, (3) number of sales and customers, and (4) evidence of copying shows that Zany Toys' Mark has achieved secondary meaning.  *See MNI Mgmt.*, 542 F. Supp. 2d at 410.

### 2.     Ownership of Mark

In the Third Circuit, the ownership of an unregistered mark is settled by the doctrine of first appropriation.  That is, "the first party to adopt a trademark can assert ownership rights, provided it continuously uses it in commerce."  *Ford Motor Co. v. Summit Motor Products, Inc.*, 930 F.2d 277, 292 (3d Cir. 1991).  Here, it is undisputed that Zany Toys was the first party to adopt the mark at issue here.  The addition of the exclamation point to Zany Toys' Mark is not a substantial change of the mark, only an improvement.  Further, Zany Toys has established that it added the exclamation point to its mark before the first sales of the product took place, and that the packaging of Zany Toys' product has consistently used the exclamation point since at least

July 2011, and has used the "TM" designation since at least September 2011.  Therefore, Plaintiff has clearly used its Mark continuously in commerce since at least July 2011, establishing its ownership rights.

3.    <u>Likelihood of Confusion</u>

"The law of trademark protects trademark owners in the exclusive use of their marks when use by another would be likely to cause confusion."  *Fisons Horticulture, Inc. v. Vigoro Industries, Inc.*, 30 F.3d 466, 472 (3d Cir. 1994) (citing *Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460, 462 (3d Cir. 1983) (other citations omitted).  A likelihood of confusion exists when "consumers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark." *Sklar*, 967 F.2d at 862.  However, before reaching the issue of whether the potentially infringing mark is "likely to create confusion," the more elementary question of whether or not Pearl made any "use of the mark to identify goods or services" must be addressed.  *Howard Johnson Int'l, Inc. v. Vraj Brig, LLC*, Civil Action No. 08-1466, 2010 U.S. Dist. LEXIS 3189, at *16-17 (D.N.J. Jan. 14, 2010); *see also* 15 U.S.C. § 1125(a).

Numerous courts have noted that the actual use of a protected mark is a prerequisite to trademark infringement action.  *See, e.g.*, *Bird v. Parsons*, 289 F.3d 865, 877 (6th Cir. 2002) (noting that claims of trademark infringement would fail unless defendants used the mark in a prohibited manner); *Holiday Inns, Inc. v. 800 Reservation, Inc.*, 86 F.3d 619, 625, 626 (6th Cir. 1996), *cert. denied*, 519 U.S. 1093 (1997) (finding that "the defendants' use of a protected mark or their use of a misleading representation is a prerequisite to the finding of a Lanham Act violation" and to otherwise "stretch[] the plain language of the Lanham Act" to cover a dispute where the defendants had not used the mark is "unjustified"); *DaimlerChrysler AG v. Bloom*, 315

14

F.3d 932, 936 (8th Cir. 2002) (noting that claims of trademark infringement and false

designation of origin under the Lanham Act require actual use as a prerequisite to liability)

(citing *Holiday Inns, Inc*., 86 F.3d at 626); *AmMed Direct, LLC v. Liberty Medical Supply, Inc*.,

No. 3:09-00288, 2009 U.S. Dist. LEXIS 87518, at *14-16 (M.D. Tenn. Sept. 23, 2009) (noting

that an essential element of proof for a Lanham Act violation is use of the mark or a deceptively

similar copy of the mark) (citing *Holiday Inns, Inc*., 86 F.3d at 626); *Nokota Horse Conservancy,*

*Inc. v. Bernhardt*, 666 F. Supp. 2d 1073, 1078 (D.N.D. 2009)  (noting that trademark

infringement claims require use of the protected mark) (citing *Holiday Inns, Inc*., 86 F.3d at 626;

*DaimlerChrysler AG*, 315 F.3d at 936)).  This includes courts in our District.  *See Howard*

*Johnson*, 2010 U.S. Dist. LEXIS 3189, at *16-22 ("In sum, the Lanham Act only prohibits the

affirmative use of a protected mark, and only when that use is in connection with the defendant's

offer or provision of goods or services."); *Ramada Worldwide, Inc. v. Shriji Krupa, LLC*, Civil

Action No. 07-2726, 2009 U.S. Dist. LEXIS 44279, at *14-17 (D.N.J. May 27, 2009) (reserving

ruling on motion for damages because the plaintiff failed to provide any evidence that the

defendant's misuse of the marks continued after receipt of cease and desist letters; plaintiff only

proffered that the defendant continued to use the marks after the cease and desist letters).

    Here, Zany Toys has failed to provide any evidence of the actual use of the protected

Mark or of any facsimile of Zany Toys' trademark by Pearl.  While Pearl has filed for a

trademark for THE NO BUTTON!, it filed an intent-to-use application, indicating that Pearl has

not used the applied-for mark in commerce.  Zany Toys has produced no evidence that Pearl is

using this mark in commerce.  While Zany Toys has provided Pearl's advertisement from third-

party website Rakuten.com from which it had identified Pearl's alleged infringing product on

August 1, 2013, this advertisement only identifies the sale of a "NO Sound Button" by Pearl.

*See* Tiernan Decl. Ex. I.  It should be noted, however, that the image of the product in this advertisement clearly shows the superimposed "N" and "O" logo of Zany Toys on it, which is undisputed by the parties as being a trademark of Zany Toys.  While this actual use of this image, together with Zany Toys' advertising story, would most likely constitute trademark infringement, the advertisement as it exists today uses neither of these things.  *See Days Inn Worldwide, Inc. v. BFC Mgmt., Inc.*, 544 F. Supp. 2d 401, 405 (D.N.J. 2008) (explaining that the unauthorized use of a party's mark for a certain period of time likely created confusion to the public).  Rather, it only advertises the sale of a "NO BUTTON (BY PEARL ENTERPRISES, LLC)," with an image of the product that lacks any of Zany Toys' Marks.  *See* Feingold Decl Ex. C.  Plaintiff has offered no other evidence of the use of its Marks by Pearl, and this Court cannot assume that such use is currently occurring.

Therefore, while Pearl's behavior is unsavory, without proof before the Court that Pearl is either using Zany Toys' trademarks or a facsimile of Zany Toys' Marks, there is nothing for this Court to enjoin.  *See, e.g.*, *Taubman Co. v. Webfeats*, 319 F.3d 770, 775 (6th Cir. 2003) ("A preliminary injunction is proper only to prevent an on-going violation.") (citing *Hecht Co. v. Bowles*, 321 U.S. 329-30 (1944)).  Consequently, Zany Toys' motion for a preliminary injunction based upon its trademark must be denied.   While Plaintiff's recitation of the facts clearly make out claims for trademark infringement and unfair competition (both statutory and under New Jersey common law), the Court is constricted in its ability to actually enjoin Defendant, who has skirted its way around the law by selling a product that may clearly violate Plaintiff's rights but that does not actually "use" the trademark at issue here.  The Court, therefore, stresses that it is <u>only</u> denying this preliminary injunction under these facts.

**IV.   Pearl's Motion to Dismiss Counts II and V of the Amended Complaint**

As discussed, Pearl has filed a motion to dismiss certain claims from Zany Toys'

Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6).  Specifically, Pearl argues that Zany

Toys has failed to properly state its copyright infringement claims in Count II, and lacks standing

to bring a claim under 18 U.S.C. § 1001.

**A.   Zany Toys' Copyright Claim**

In its Amended Complaint, Zany Toys alleges that Pearl has infringed upon two of its

copyrights.  The first of these copyrights is for "some or all of the voice recordings incorporated

in Plaintiff's product," for which Zany Toys owns a copyright registration.  The second of these

copyrights is for the design of Zany Toys' product, for which Zany Toys had filed a copyright

application, but was not registered.[5]  Pearl has moved to dismiss these claims, arguing that Zany

Toys has failed to state a claim for copyright infringement.  Because the Court must dismiss

these claims under Rule 12(b)(6), Zany Toys' request for a preliminary injunction based on

copyright infringement must also be denied.

**1.   Zany Toys' Design Copyright**

 Plaintiff has asserted a claim for copyright infringement in its design of its product;

specifically, Zany Toys alleges that Pearl has infringed upon its design copyright of THE NO!

BUTTON product, because Pearl "deliberately and intentionally copied Plaintiff's product in its

entirety, and most importantly, Defendant copied Plaintiff's layout and arrangement, visual

presentation, color scheme, shape scheme, font and the overall look and appearance of Plaintiff's

product."  Am. Compl. ¶ 103.   In order to establish a claim for copyright infringement, "two

elements must be proven:  (1) ownership of a valid copyright, and (2) copying of constituent

---

[5] As discussed below, at the time of the filing of the Amended Complaint, Zany Toys' application was pending. Since that time, Zany Toys' registration has been denied.

elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). A copyright registration certificate is prima facie evidence sufficient to meet the first prong of the analysis. *See* 17 U.S.C. § 410(c); *Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 290 (3d Cir. 1991).

Section 411(a) of the Copyright Act specifically provides that "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title." 17 U.S.C. § 411(a); *see also Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 157 (2010) ("Section 411(a)'s registration requirement is a precondition to filing a claim that does not restrict a federal court's subject-matter jurisdiction."). Despite this seemingly clear language of the statute, courts are split over whether the pre-suit "registration" requirement mandates that a certificate of registration must be issued by the Copyright Office before bringing suit (the "registration approach") or if a pending copyright application is sufficient (the "application approach"). *See Patrick Collins, Inc. v. Doe*, 843 F. Supp. 2d 565, 568 (E.D. Pa. 2011) (citing *Cosmetic Ideas, Inc. v. IAC/Interactivecorp.*, 606 F.3d 612, 615-16 (9th Cir. 2010) (cataloging cases and noting circuit split). While the Third Circuit has not squarely addressed this issue, it has found that "[a]n action for infringement of a copyright may not be brought until the copyright is registered." *Dawes-Lloyd v. Publish Am., LLP*, 441 F. App'x 956, 957 (3d Cir. 2011) (per curiam). While *Dawes-Lloyd* dealt with a plaintiff who had apparently not registered her copyright or filed for a copyright, such a statement by the Third Circuit at least suggests that this Circuit would take the registration approach. *See Patrick Collins*, 843 F. Supp. 2d at 569. This is particularly persuasive when taken in consideration with the unambiguous language of the relevant statutory language. *See* 17 U.S.C. § 411(a). Therefore, the Court will adopt the registration approach for

18

Zany Toys' claim for copyright infringement, in accordance with other courts in this District. *See North Jersey Media Group Inc. v. Sasson*, Civil Action No. 12-3568, 2013 U.S. Dist. LEXIS 1536, at *6-7 (D.N.J. Jan. 4, 2013); *Levey v. Brownstone Inv. Group, LLC*, Civil Action No. 11-395, 2012 U.S. Dist. LEXIS 12175, at *8-10 (D.N.J. Feb. 1, 2012) ("[T]he law is clear: copyright holders must register their works before suing for copyright infringement."); *IDT Corp. v. Unlimited Recharge, Inc.*, Civil Action No. 11-4992, 2011 U.S. Dist. LEXIS 138666, at *20-21 (D.N.J. Dec. 2, 2011) (finding that proof of an application for registration was insufficient to establish a likelihood of success on the merits necessary for a preliminary injunction); *Telebrands Corp. v. Exceptional Prods.*, Civil Action No. 11-2252, 2011 U.S. Dist. LEXIS 139308, at *7 (D.N.J. Dec. 5, 2011) ("[A] party may not state a prima facie case of copyright infringement where the party does not hold a registered copyright in accordance with 17 U.S.C. § 411(a)."); *see also Patrick Collins*, 843 F. Supp. 2d at 568-70.

Here, Zany Toys has alleged that it "has filed an expedited copyright application for the design of its THE NO! BUTTON on July 26, 2013, under Case No. 1-983605311."  Am. Compl. ¶ 17.  At the time it filed its Amended Complaint, therefore, Zany Toys did not have a registered copyright for its product design.  Evidence of an application for registration is insufficient to establish a likelihood of success on the merits for a copyright infringement claim.  *See IDT Corp.*, 2011 U.S. 2011 U.S. Dist. LEXIS 138666, at *20-21.  Therefore, because Zany Toys' failure to establish the necessary pre-condition of having registered its copyright before filing its Amended Complaint, it has failed to allege a prima facie case for copyright infringement.  *See N. Jersey Media Group*, 2013 U.S. Dist. LEXIS 1536, at *7; *Levey*, 2012 U.S. Dist. LEXIS 12175, at *8.  Consequently, the Court must deny Plaintiff's claim for a preliminary injunction at this

time, and must grant Pearl's motion to dismiss this part of Count II of Plaintiff's Amended Complaint, but stresses that this dismissal is without prejudice.[6]

### 2.     Zany Toys' Sound Recordings

Next, Plaintiff asserts a claim for copyright infringement of its sound recordings in its product. *See* Am. Compl. ¶¶ 102, 105.   As discussed, a claim for copyright infringement requires ownership of a copyright and copying by the defendant. *Dam Things from Den. v. Russ Berrie & Co.*, 290 F.3d 548, 561 (3d Cir. 2002).  A copyright registration certificate is prima facie evidence sufficient to meet the first prong of the analysis. *See* 17 U.S.C. § 410(c); *Ford Motor,* 930 F.2d at 290.  Plaintiff owns a copyright registration over "all or most" of the sound recording incorporated within its product.  Therefore, this first prong is satisfied.

Under the second prong of a claim for copyright infringement, a plaintiff must show that the allegedly infringing party "copied" their work.  With respect to copyrights in sound recordings,[7] the Copyright Act confers more limited rights than to other types of copyrighted work.  *See* 17 U.S.C. §§ 106, 114.  For example, only the rights of reproduction, preparation of derivative works, and distribution of copies are conferred to a copyright owner of a sound recording.  "Moreover, the rights that are conferred are more limited than in the case of other

---

[6] Before the issuance of this Opinion, but after the filing of its Amended Complaint and briefing was concluded on both motions before the Court, Zany Toys filed a letter indicating that this copyright has been rejected by the U.S. Copyright Office. While § 411(a) allows for the institution of a copyright infringement action once an applicant has been refused registration, the language of the statute once again specifies that such an action can only be commenced once the registration is refused, not when such application is pending. *See* § 411(a) ("[W]here the deposit, application, and fee required for registration have been delivered to the Copyright Office in proper form and registration *has been refused*, the applicant is entitled to initiate a civil action for infringement. . . .") (emphasis added).  The fact that the pending application has been refused does not change the fact that Zany Toys filed its claim before it had met the necessary pre-condition.   Plaintiff, however, has leave to file a second amended complaint.  Because Zany Toys would not be stating a claim for copyright infringement based on an unregistered work, it must take care to allege sufficient facts to allow this Court to plausibly infer that the work is protectable.

[7] While most copyright infringement claims are primarily concerned with the issue of if the allegedly infringing work is substantially similar to the original work, the analysis for determining the infringement of a sound recording copyright is different.  *See Bridgeport Music, Inc. v. Dimension Films*, 410 F.3d 792, 798 (6th Cir. 2005).  "The scope of inquiry is much narrower when the work in question is a sound recording. The only issue is whether the actual sound recording has been used without authorization. Substantial similarity is not an issue." *Id.* at 798 n.5 (citation omitted); *see also Fharmacy Records v. Nassar*, 248 F.R.D. 507, 527 (E.D. Mich. 2008).

works." *Agee v. Paramount Communs.*, 59 F.3d 317, 321 (2d Cir. 1995).  For example, the

reproduction right

> is limited to the right to duplicate the sound recording in the form of phonorecords
> or copies that directly or indirectly recapture the actual sounds fixed in the
> recording . . . . The exclusive rights of the owner of a copyright in a sound
> recording…do not extend to the making or duplication of another sound recording
> that consists entirely of an independent fixation of other sounds, even though such
> sounds imitate or simulate those in the copyrighted sound recording.

17 U.S.C. § 114(b).  In other words, "[m]ere imitation of a recorded performance would not

constitute a copyright infringement even where one performer deliberately sets out to simulate

another's performance as exactly as possible." *Midler v. Ford Motor Co.*, 849 F.2d 460, 462 (9th

Cir. 1988) (quoting Notes on the Judiciary, 17 U.S.C.A. § 114(b)); *see also Bridgeport Music*,

410 F.3d at 800 ("This means that the world at large is free to imitate or simulate the creative

work fixed in a recording so long as an actual copy of the sound recording itself is not made.").

Therefore, courts have found that copyright protection for sound recordings extends only to

duplications of such recordings, not to imitations.  *See, e.g.*, *Bridgeport Music, Inc. v. Dimension

Films*, 410 F.3d at 800; *Lieb v. Topstone Indus.*, 788 F.2d 151, 153 (3d Cir. 1986) (recognizing

district court's granting of summary judgment because "defendants had not violated the Act

because the legislative history makes clear that deliberate imitation does not contravene the

limited protection extended to recordings"); *Erickson v. Blake*, 839 F. Supp. 2d 1132, 1135 n.3

(D. Or. 2012) ("[A] a copyright in a sound recording only protects against a direct duplication of

that recording."); *Marshall v. Huffman*, Civil No. 10-1665, 2010 U.S. Dist. LEXIS 134334, *10-

12 (N.D. Cal. Dec. 9, 2010) (dismissing a claim for copyright infringement of a sound recording

because plaintiffs claim did not  "allege that the actual sounds fixed in the copyright sound

recording were duplicated"); *Romantics v. Activision Publ'g, Inc.*, 574 F. Supp. 2d 758, 768

(E.D. Mich. 2008)  (explaining that § 144(b) "expressly disallows any recourse for a sound-alike

recording of a song"); *Fharmacy Records*, 248 F.R.D. at 528 (entering summary judgment for defendants on a sound recording copyright infringement claim where plaintiffs failed to offer proof that the sound recording was duplicated); *Griffin v. J-Records*, 398 F. Supp. 2d 1137, 1142 n.14 (E.D. Wash. 2005) (holding that a sound recording copyright is not violated where a party attempts to imitate the recording).

Here, Zany Toys has only alleged that Pearl has "copied many, if not all, of the voice recordings incorporated in Plaintiff's product." Am. Compl. ¶ 105. While there are no additional allegations in the Amended Complaint itself, Zany Toys submitted the Tiernan Declaration in support of its Amended Complaint. Within this declaration, Ms. Tiernan states that Pearl's product "recites many of the identical versions of 'No!'," and lists four examples. She specifies that Pearl's voice recordings are "more 'staticy' and garbled." Missing from this declaration, and from the entire Amended Complaint, are any allegations that Pearl has duplicated any of the sound recordings to which Zany Toys owns a copyright. Without any factual allegations that the actual sounds fixed in Zany Toys' copyrighted recording were directly duplicated by Pearl into its product, rather than imitated (even if such imitation is deliberate), Zany Toys has failed to properly allege a claim for copyright infringement of its sound recordings.[8] *See, e.g.*, *Bridgeport Music*, 410 F.3d at 800; *Marshall*, 2010 U.S. Dist. LEXIS 134334 at *10-12. Therefore, because Plaintiff has failed to state a claim for copyright infringement of either its product design or its sound recording, the Court must dismiss Count II of the Amended Complaint, but does so without prejudice.

---

[8] Because Plaintiff has failed to properly state a claim, the Court need not address the issue of granting a preliminary injunction. The Court notes, however, that it has listened to the recordings submitted by Defendant Pearl in support of its motion to dismiss, and finds that Pearl's recording does appear to be noticeably different from Zany Toys' recording. Therefore, based upon these submitted recordings, the Court would not be inclined to grant a preliminary injunction to Zany Toys even if it had properly alleged a claim for copyright infringement.

**B.    Zany Toys' Claim under 18 U.S.C. § 1001**

In Count V of its Amended Complaint, Zany Toys' claim arises from alleged violations of 18 U.S.C. § 1001.  18 U.S.C. § 1001 is a federal criminal statute that provides a criminal punishment for submitting a false statement to the federal government.  Nothing in this statute, however, provides for a private right of action or a civil remedy for a person affected by such a statement.  *See Williams v. Fort Lee Pub. Sch.*, Civil Action No. 11-06314, 2013 U.S. Dist. LEXIS 179757, at *14-15 (D.N.J. Dec. 23, 2013) (citing *Andrews v. Heaton*, 483 F.3d 1070, 1076 (10th Cir. 2007)); *Abulkhair v. Friedrich*, Civil Action No. 06-2521, 2006 U.S. Dist. LEXIS 38156, at *6 (D.N.J. June 8, 2006) (quoting *Daniels v. Am. Postal Worker Union*, 167 F. Supp. 2d 999, 1003 (N.D. Ill. 2001)); *Johnson v. Cullen*, 925 F. Supp. 244, 251 (D. Del. 1996) (citing cases).  Consequently, Zany Toys lacks standing to bring a claim against Pearl based upon a violation of 18 U.S.C. § 1001.  Therefore, Count V must be dismissed.

**V.    Conclusion**

For the reasons stated above, Plaintiff Zany Toys' Motion for a Preliminary Injunction is denied.  Defendant Pearl's Motion to Dismiss Counts II and V of Plaintiff's Amended Complaint is granted, which means that Zany Toys' copyright claims and Title 18 claim are dismissed.  These claims, however, will be dismissed without prejudice.  To the extent the deficiencies can be cured by way of amendment, Plaintiff is granted thirty days to file a Second Amended Complaint solely for the purposes of amending such claims.  An appropriate Order accompanies this Opinion.

/s/ Joel A. Pisano
JOEL A. PISANO, U.S.D.J.

Dated: May 23, 2014